**SIMMONS FASTENER CORPORATION,**
Appellee,

v.

**ILLINOIS TOOL WORKS,**
**INC., Appellant.**

**Appeal No. 83–1084.**

United States Court of Appeals,
Federal Circuit.

July 31, 1984.

Granger Cook, Jr., Chicago, Ill., argued for appellant. With him on the brief was Russell J. Barron, Chicago, Ill.

Thomas W. Buckman and Jack R. Halvorsen, Chicago, Ill., of counsel.

Eliot S. Gerber, New York City, argued for appellee.

Richard Kohn, Albany, N.Y., of counsel.

Before BALDWIN, MILLER, and SMITH, Circuit Judges.

BALDWIN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Northern District of New York [1] holding U.S. Patent No. 3,802,476 ('476 patent) entitled "Screw Anchor" to James E. Hoadley invalid for obviousness. We reverse the decision and remand the case to the trial court.

### Background

Both appellant, Illinois Tool Works, Inc. (ITW), and appellee, Simmons Fastener Corporation (Simmons), make and sell industrial fasteners to refrigerator manufacturers. The '476 patent was assigned to ITW.

The particular industrial fastener involved in this case, also called a screw anchor, is useful in refrigerators having a steel outer shell, a thin flexible plastic liner, and foamed-in-place insulation in between. The plastic liners posed many difficulties to manufacturers wishing to install shelves and other hardware in the refrigerator cabinet, because the liners were fragile and subject to cracking, and foam injected during the foaming process would leak through the fastener holes made in the liner into the refrigerator cabinet. The ITW fastener, which embodies the invention of the '476 patent as defined by claims 1 and 2 of that patent, is one of many products devised in response to the fasten-

---

**1.** 560 F.Supp. 1277, 218 USPQ 547 (1983).

ing problems of the refrigerator industry. The trial court opinion fully describes the claimed invention. and the prior art and recites claims 1 and 2 of the '476 patent.

### Proceedings

In June, 1980, Simmons filed a declaratory judgment action seeking a judgment that the '476 patent was invalid, unenforceable,[2] and not infringed by certain self-adhering screw anchors manufactured and sold by Simmons. ITW counterclaimed for infringement of the '476 patent.

In the memorandum accompanying its judgment, the trial court held the '476 patent invalid for obviousness and refrained from deciding the issues of infringement and enforceability.

### Issue

Did the trial court err in holding the '476 patent invalid under 35 U.S.C. § 103?

### OPINION

At trial, Simmons' counsel conceded the commercial success of ITW's Hoadley screw anchor: "Now, we admit, and I will be willing to enter into a stipulation that there is commercial success. They have sold millions, we have sold millions, so there is commercial success."

In the parties' amended pretrial statement, in a section called *"Facts Not In Dispute"* the parties agreed that:

25. ITW has made and sold millions of products covered by the claims of the patent-in-suit to General Electric, Whirlpool Corporation, White Consolidated Industries and others. The ITW patented product has been a substantial commercial success.

26. Simmons has sold millions of its products to White Consolidated Industries and others.

As for "long felt but unsolved needs," the court said that satisfaction of such needs depended on whether they were considered individually or collectively. The court then listed twelve advantages of ITW's device along with the prior art devices that afforded some of the same advantages, and said: "Thus the 'unsolved need' satisfied by Hoadley could only be found, if at all, in marketing a device which combines these advantages."

Although the court did not consider prior fasteners to be "failed attempts," it acknowledged that "the Hoadley device, by combining elements present in the prior art, constituted an improvement over any individual prior fastener. This is evidenced not only by its commercial success but by the limitation[sic] of others, including Simmons."

After a discussion of the most pertinent prior art references,[3] the court said:

*[I]t is * * * established that "secondary considerations will not support a claim of invention if the subject-matter of the patent does not pass the section 103 test of non-obviousness."* * * * ("[C]ommercial success 'cannot breathe life into a patent otherwise invalid because of obviousness'".) [Citations omitted.]

Therefore, while the Hoadley invention constituted a practical and *commercially popular* means of fastening, the Court is persuaded by what it regards to be clear and convincing evidence that the subject matter of the Hoadley patent would have been obvious to a skilled engineer in the fastener field at the time the invention was made. The patent is therefore invalid under 35 U.S.C. § 103. [Emphasis added.]

■ We reverse the decision of the trial court that the claims of the '476 patent would have been obvious under 35 U.S.C. § 103 and remand the case for determinations on the questions of infringement and enforceability, because the trial court erred as a matter of law in refusing to consider the evidence of secondary considerations

---

2. The asserted grounds for unenforceability are that ITW failed to fully and accurately describe prior art to the Patent and Trademark Office and that ITW engaged in various acts of patent misuse.

3. Knowlton, U.S. Patent No. 3,266,699; Simmons, 3188 back-up plate; Krueger, U.S. Patent No. 3,298,271.

(objective evidence) mandated by *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966), in arriving at its decision on obviousness.

The section 103 test of nonobviousness set forth in *Graham* is a four part inquiry comprising, not only the three familiar elements (scope and content of the prior art, differences between the prior art and the claims at issue, and level of ordinary skill in the pertinent art), but also evidence of secondary considerations when such evidence is, of course, present. *Jones v. Hardy*, 727 F.2d 1524, 1527, 220 USPQ 1021, 1023 (Fed.Cir.1984).

Only after all evidence of nonobviousness has been considered can a conclusion on obviousness be reached. The trial court's error lies in its exclusion of such evidence in arriving at a conclusion on the obviousness of the claimed invention.

In *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed.Cir.1983), this court said:

> [E]vidence rising out of the so-called "secondary considerations" must always when present be considered en route to a determination of obviousness. *In re Sernaker*, 702 F.2d 989, 217 USPQ 1 (Fed. Cir.1983) citing *In re Fielder and Underwood*, 471 F.2d 640, 176 USPQ 300 (CCPA 1983), *see In re Mageli et al.*, 470 F.2d 1380, 1384, 176 USPQ 305, 307 (CCPA 1973) (evidence bearing on issue of nonobviousness "is never of 'no moment,' is always to be considered and accorded whatever weight it may have.") Indeed, *evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not.* It is to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art. [Emphasis added.]

Also, in *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555, 220 USPQ 303, 314 (Fed.Cir.1983), this court said:

Having determined that the invention would have been obvious in view of the process of either Smith or Sumitomo, the district court did not discuss the strong showing of objective evidence of nonobviousness here present, saying with respect to one part of such evidence, "no amount of commercial success can save it." That approach was error. All evidence bearing on the issue of obviousness, as with any other issue raised in the conduct of the judicial process, must be considered and evaluated *before* the required legal conclusion is reached. [Citing *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d at 1538, 218 USPQ at 879 (Fed.Cir.1983).]

The objective evidence of non-obviousness, i.e., the "indicia" of *Graham* * * * may in a given case be entitled to more weight or less, depending on its nature and its relationship to the merits of the invention. It may be the most pertinent, probative, and revealing evidence available to aid in reaching a conclusion on the obvious/nonobvious issue. It should when present always be considered as an integral part of the analysis.

See also, *In re De Blauwe*, 736 F.2d 699, at 705–706 (Fed.Cir.1984); *Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1461, 221 USPQ 481, 487–88 (Fed.Cir.1984); *Jones*, 727 F.2d at 1530–31, 220 USPQ at 1026–27; *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 961, 220 USPQ 592, 600 (Fed. Cir.1983); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1575, 220 USPQ 97, 105, (Fed.Cir.1983); *In re Sernaker*, 702 F.2d 989, 996, 217 USPQ 1, 7 (Fed.Cir.1983).

A nexus between the merits of the claimed invention and the evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision. *Stratoflex*, 713 F.2d at 1539, 218 USPQ at 879. The requisite nexus was found by the trial court. *See* supra.

We agree with the trial court that the teachings of the prior are prima facie

would have suggested to one of ordinary skill in the art the claimed invention. The reader is referred to the trial court's opinion for its discussion of the first three *Graham* factors. However, the evidence of secondary considerations ·in this case, particularly commercial success, is extremely strong, and is entitled to great weight. In considering the evidence of obviousness/nonobviousness collectively, we conclude the trial court's decision that the claimed invention of the '476 patent would have been obvious under 35 U.S.C. § 103 must fall. We accordingly reverse the trial court's decision, and remand the case to the trial court for a determination of the infringement and enforceability questions.

■ When questions of validity and infringement are raised in the same proceeding, the trial court should decide both issues and enter judgment on both. *Lindemann,* 730 F.2d at 1463–64, 221 USPQ at 489–90; *Stratoflex,* 713 F.2d at 1540–41, 218 USPQ at 880.

Though an invalid claim cannot give. rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity. Because both validity and infringement involve .construction of a claim, and because the construction must be the same in determining both, it is desirable to decide both questions at the same time.

*Medtronic,* 721 F.2d at 1582–83, 220 USPQ at 111.

The decision as to obviousness is *reversed* and the case is *remanded* to the trial court for a determination of the questions of whether the claims of the '476 patent are infringed by the accused Simmons devices ·and whether the '476 patent is enforceable.

REVERSED AND REMANDED.