**BOWLES FLUIDICS CORPORATION, Plaintiff,**

v.

**Gerald J. MOSSINGHOFF, Commissioner of Patents and Trademarks, Defendant.**

**Civ. A. No. 83–3759.**

United States District Court, District of Columbia.

Oct. 25, 1985.

William D. Hall, Howard L. Rose, Darle M. Short, Potomac, Md., for plaintiff.

Fred E. McKelvey, Deputy Sol., U.S. Patent and Trademark Office, Arlington, Va., for defendant.

## OPINION

JUNE L. GREEN, District Judge.

This case is before the Court on the pleadings, the record made at the trial to the Court, joint brief of the parties, and the entire record herein.

### Statement of Facts

This is a civil action under 35 U.S.C. §§ 145 (1984), 306 (1980), in which plaintiff Bowles Fluidics Corporation ("Bowles"), the owner of U.S. Patent No. 4,157,161 ('161 patent), seeks judicial review of a decision of the Board of Appeals ("Board") of the U.S. Patent and Trademark Office ("PTO"), holding claims 1–7, 9–13, 15, 16, and 20–28 unpatentable in Reexamination Control No. 90/000,066.

Plaintiff Bowles is a corporation duly organized and existing under and by virtue of the laws of the State of Maryland.

Defendant is the Commissioner of Patents and Trademarks, being sued in his official capacity.

U.S. Patent No. 4,157,161 was issued to Bowles on June 5, 1979, based on a patent application naming Peter Bauer as inventor and filed in the PTO on September 30, 1975. (Plaintiff's Exhibit 1).

Peter Bauer invented the subject matter disclosed and claimed in an application for United States Letters Patent which matured into United States Patent No. 4,157,-161, issued June 5, 1979, for Windshield Washer. Before the aforesaid patent issued, Peter Bauer assigned his entire right, title, and interest in and to said invention, said patent application, and said patent to Bowles Fluidics Corporation. Bowles has been, since the issuance of said patent, and still is, the owner of the entire right, title, and interest in and to said patent.

The Bauer patent has enjoyed great commercial success, having been adopted widely by automobile manufacturers in the United States and is the major activity of plaintiff company.

On September 9, 1981, after leaving plaintiff's employ, Peter Bauer filed a request for re-examination of the patent (Plaintiff's Exhibit 6), pursuant to 35 U.S.C. §§ 302–304 (1980), 305 (1984).

During re-examination, plaintiff-owner cancelled claims 8, 14, 17 18, and 19 and added claims 25, 26, 27, and 28.

The added claims are:

25. A windshield washer system for a vehicle comprising:

at least one nozzle for applying a fan-shaped spray of drops of liquid to a windshield, over the area to be wiped by wiper blades,

a container of windshield washer liquid,

a pump for delivering liquid from said container to said nozzle,

windshield washers for wiping said liquid from the windshield,

said nozzle having means for producing a swept jet of liquid of a size, fan angle and oscillatory frequency to produce drops of liquid in a desired fan angle and a size sufficient to carry to the windshield in a desired pattern at high and low speeds of the vehicle in the presence of wind currents and further generally to prevent the formation of puddles on the windshield in the interval between passage of the wiper blades.

26. A vehicle window washer for use in conjunction with one or more wiper blades arranged to wipe a window, said washer comprising,

a reservoir of wash liquid,

sprayer means, and

means for selectively delivering wash liquid under pressure from said reservoir to said sprayer means,

wherein said sprayer means comprises:

a body member,

an inlet defined in said body member for receiving said wash liquid under pressure,

jet defining means within said body member responsive to the received liquid for forming a liquid jet,

an outlet opening defined in said body member for issuing said jet exteriorly of said body member and onto said window, said outlet opening being elongated in at least one dimension transverse to the flow direction of said jet therethrough,

jet sweeping means located within said body member and operated solely by the pressure of said received liquid for breaking said issued jet up into droplets by repetitively sweeping said jet in said one dimension to cause said droplets to be dispersed onto said window in a fan covering the area to be cleaned by the wiper blades, and

said jet sweeping means being of such size as to produce droplets having a pattern and being of such a size as to wet said area of said window at low and high vehicle speeds in the presence of varying wind currents without producing appreciable puddling between passes of the wiper blades.

27. The method of wetting a vehicle window as part of a window washer and wiper arrangement, said method comprising the steps of:

pressurizing a quantity of wash liquid,

forming a jet of the pressurized wash liquid, under the sole initiative of the pressure of said liquid,

repetitively sweeping said jet in at least one dimension transverse to the flow direction of said jet in an oscillatory manner, and

issuing the repetitively swept jet of a cross-sectional area to cause it to break up into droplets of a size and directions to cause the drops to impinge upon the window in a generally fan-shaped pattern across at least the area of desired view through the window at high and low speeds of the vehicle in the presence of varying wind currents without producing appreciable puddling between passes of the wipers.

28. The method according to claim 27 wherein the drop size distribution is repetitive between patterns.

The patent examiner rejected all claims in the patent as unpatentable under 35 U.S.C. § 103 (1984) as obvious to one of ordinary skill in the art. The prior art cited included the Stouffer I ('002)[1] patent and a patent to Oishei.[2] The Oishei patent 3,199,787 was not relied on alone, but always in combination with the Stouffer '002 patent.

In addition, the examiner relied on Stouffer '558 [3] in rejecting claims 3, 12, and 22 and Applebaum '068 [4] in rejecting claims 6 and 7. *Bauer Invention-in-Suit.*

**1.** U.S. Patent No. 4,052,002, ('002) Stouffer I, issued to Bowles Fluidics Corporation on October 4, 1977, based on a patent application naming Ronald D. Stouffer and Harry C. Bray, Jr., as inventors and filed in the PTO on September 30, 1975. (Plaintiff's Exhibit 3). The application is a continuation of an earlier patent application filed September 30, 1974.

**2.** U.S. Patent No. 3,199,787 (Oishei patent) issued to Trico Products Corporation on August 10, 1965, based on a patent application naming

John F. Oishei and Anthony C. Scinta as inventors. (Plaintiff's Exhibit 2).

**3.** U.S. Patent No. 3,973,558 ('558) issued September 7, 1976, to Bowles Fluidics Corporation naming Ronald D. Stouffer and Peter Bauer as inventors. (Plaintiff's Exhibit 4).

**4.** U.S. Patent No. 3,979,068 ('068) issued September 7, 1976, to Beverly Applebaum as inventor. (Plaintiff's Exhibit 5). Mr. Sherling, counsel for PTO, has stipulated that the only two references relied upon for obviousness are the '002 Stouf-

The subject matter in suit is a windshield washer system for use on a vehicle. With reference to Figs. 2, 3, and 4 (Plaintiff's Exhibit 1), the invention-in-suit is a vehicle windshield washer system comprising:

(1) nozzles 3, 4 containing "sprayer means" (*i.e.*, a "sweeping jet") for spraying water or a cleaning fluid in a spray pattern, generally fan-shaped (col. 2, lines 46–47), on a windshield 2;

(2) a container (reservoir) 31 for holding water or cleaning fluid to be supplied to the nozzles;

(3) a pump 32 for supplying water or cleaning fluid to the nozzles; and

(4) windshield wiper blades 5, 6.

According to the Bauer patent (col. 9, lines 50–56):

In its broadest contexts, the invention as described contemplates a windshield washer employing a sweeping jet, no matter how it is swept. In a narrower concept the invention contemplates the use of a fluidic oscillator as a windshield washer....

A particular fluidic oscillator (Plaintiff's Exhibit 1, Fig. 2) with no moving parts and having various flow channels and passages is described in the Bauer patent. According to the patent (col. 3, lines 26–55):

The channels are preferably defined at one surface of a base plate 11, which surface is then sealed by a cover plate (not shown). Alternatively, plate 11 may be a center plate sandwiched between top and bottom cover plates. A tapered or convergent power nozzle 12 is adapted to receive pressurized wash liquid and issue a liquid jet into the upstream end of an interaction region 13. The interaction region is defined between left and right sidewalls 15 and 16, respectively, which first diverge from power nozzle 12 and then converge toward an outlet throat 14 located at the downstream end of the region. Nozzle 12 and throat 14 are disposed in substantial alignment with one another along the longitudinal centerline of oscillator 10. An outlet region

17 is located immediately downstream of throat 14 and is defined between left and right outlet walls 18 and 19, respectively, which diverge in a downstream direction from throat 14. A left control passage 21 extends between outlet region 17 and the upstream end of interaction region 13 through port 23 defined in left outlet wall 18 and port 24 defined in left sidewall 15. A similar right control passage 22 extends between outlet region 17 and the upstream end of interaction region 13 through port 25 in right outlet wall 19 and port 26 defined in right sidewall 16. The upstream sides or ports 24 and 26 terminate at the outlet of power nozzle 12; the upstream sides of these ports are set back from the oscillator centerline relative to the upstream sides.

Figure 2 of Bauer shows the silhouette of the base plate and liquid and air therein while the fluidic oscillator is in operation.

The claims under re-examination and involved in this civil action are claims 1–7, 9–13, 15, 16, and 20–28.

Claims 1–7, 13, 15, 16, 20–22, 25, and 26 are generic to a window washer comprising a nozzle in combination with a container for liquid, a pump, and wiper blades wherein the nozzle is one which produces a "sweeping jet" of droplets of fluid. Claims 5–7 specify two windshield washers. Claims 2, 13, 15, 16, and 21 specify that the "sweeping jet" is produced by a "fluidic oscillator." Claim 3 is specific to a "sweeping jet" having "vibratory means."

Claims 9–12, 23, 24, 27, and 28 relate to a method. Claims 9, 10, 23, 24, 27, and 28 are generic to the method of wetting a vehicle window having a wiper with a "sweeping jet" of droplets of fluid. Claim 11 is specific to the step of "sweeping" with an apparatus that has no moving parts. Claim 12 is specific to the step of "sweeping" with an apparatus that has moving parts.

*The Oishei Patent*

The Oishei patent relates to a windshield washer system for use on a vehicle. "The principal object" of Oishei's invention is:

fer patent and Oishei patent; that the case

stands or falls on these. (Tr. 16).

to provide an improved washer system which projects onto a windshield a wide fan-shaped spray pattern of finely divided deposits of washer solvent separated from each other so that vision during the wetting operation is not obscured.

Plaintiff's Exhibit 2, col. 2, lines 6–11.

With reference to Figs. 1–2, the Oishei windshield washer system comprises:

(1) a nozzle 28 for spraying washer solvent on a windshield 12;

(2) a container (reservoir) 26 for holding washing solvent to be supplied to the nozzle;

(3) a pump 24 for supplying washer solvent to the nozzle;

(4) windshield wiper blades 22; and

(5) the nozzle is formed of elastomeric material. It has a slit normally biased to a closed position. When the pump operates washer solvent accumulates in the nozzle until sufficient pressure develops to cause opening of the slit and discharge of the solvent. The drop in pressure causes closing of the slit and sufficient build-up and discharge of the solvent. This repeated opening and closing of the slit results in a "vibrating orifice."

*The Stouffer and Bray Patent (Stouffer I)*

The Stouffer I patent "relates to a method and apparatus for effecting controlled dispersal of fluid" (Plaintiff's Exhibit 3, col. 1, lines 8–9). According to the patent, the invention "relates to techniques for cyclically deflecting a fluid jet in order to achieve specific flow patterns...." (Col. 1, lines 11–12).

Stouffer I recognizes that fluidic oscillators are well known in the prior art and credits Bauer, among others, with invention in this field. The distinction between the Stouffer I oscillator and those in the prior art is described in col. 9, lines 5–15:

Operation of this particular oscillator in contradistinction to prior oscillators is characterized by the fact that neither working fluid from the power jet nor ambient fluid is ingested back into interaction region 13 through control passages 21 and 22. Instead, when the jet flows along left sidewall 15 towards right outlet wall 19 it entrains and merges with outflow through right control passage 22; meanwhile left control passage remains filled with fluid derived from the upstream end of interaction region 13.

The examiner considered that it would have been obvious to one with ordinary skill in the art to substitute the fluidic oscillators disclosed in Stouffer 4,052,002 for the Oishei 3,199,787 nozzle. The Board concurred, although it disagreed with the examiner's contention that commercial success cannot "tip the scale" in favor of allowance.

The Board seemed to recognize that plaintiff's windshield washer might be patentable. Here they rejected the examiner's position, citing with respect to "commercial success" *In re McLaughlin*, 443 F.2d 1392 (C.C.P.A.1971); *In re Tiffin*, 448 F.2d 791 (C.C.P.A.1971); *In re Fielder*, 471 F.2d 640 (C.C.P.A.1973); *In re Felton*, 484 F.2d 495 (C.C.P.A.1973); *In re Rinehart*, 531 F.2d 1048 (C.C.P.A.1976). Then they cited *In re Grasselli*, 713 F.2d 731 (Fed.Cir.1983), which states that objective evidence of nonobviousness (*i.e.*, commercial success) must be commensurate in scope with claims that the evidence is offered to support.

As noted, the Board of Appeals found patentable subject matter; however, they charged the applicant with failure to include it in the claims as follows:

In our opinion, the evidence offered by appellant conclusively establishes that a droplet size of 1000 to 1500 microns is critical to the success of the invention. However, this critical aspect not only does not appear in the claims but is not even disclosed. Accordingly, the evidence offered to rebut obviousness is not commensurate in scope with the claims.

Plaintiff's Exhibit 6, Board of Appeals Decision, page 4, lines 23–29.

This conclusion was in error. Plaintiff notes that the 1000 to 1500 micron range is *not* critical to the success of the invention. These figures originated in Dharapuram N.

Srinath's declaration of August 30, 1982. (Plaintiff's Exhibit 7; Tr. 224–25). The way Srinath arrived at the numbers was to build a Bauer nozzle that was tested up to 55 mph and measured the size of the drops. (Tr. 225, 98–100, 198–200). The 1500 figure was not a maximum but simply an example of a workable number. If one makes a measurement of the droplets, he gets 1000 to 1500 for the low end of the range. The high end of the range has not been measured but it would be characterized by unwanted puddles. (Tr. 98–100).

The defendant's unpersuasive response to the above is the simple assertion: "The board's finding that a droplet size of '1000 to 1500 microns' (meaning the droplets had to be larger than 1000–1500 microns) is critical to Bauer's invention is not erroneous." Commissioner's Proposed Findings of Fact and Conclusions of Law at 49.

The record shows that the numbers do not reflect the full range of droplet size produced. Further, they could not have been included in the claims since they were not discovered until August 1982, seven years after the patent was filed and three years after it issued.[5] Clearly, it was error to charge the plaintiff with failure to include them in the claims.

There are three categories of windshield washers pertinent to the resolution of this case:

1. Those which deliver a solid stream of fluid to the windshield where it is picked up and spread over a portion of the windshield by the wiper blades. (This type has been installed in commercial and private vehicles for years).

2. The Oishei system which incorporates a rubber tip with a slit. The slit forms a vibrating orifice from which the liquid issues in the form of a mist. (This system was tested and discarded by the automobile industry because it did not perform satisfactorily at all speeds).

3. The Bauer system which delivers a fan spray of liquid to the windshield at all speeds from 0 to 60 mph. (This system, including an improved version thereof patented by Bray, is enjoying wide commercial success displacing many of the units identified in category 1.)

### Conclusions of Law
### OBVIOUSNESS

There are a number of cases which set forth the section 103 tests to be applied in a determination of obviousness. In *Simmons Fastener Corp. v. Illinois Tool Works,* 739 F.2d 1573, 1575 (Fed.Cir.1984), the appellate court, in reversing the trial court's holding of obviousness, stated:

> [T]he trial court erred as a matter of law in refusing to consider the evidence of secondary considerations (objective evidence) mandated by *Graham v. John Deere Co.,* 383 U.S. 1, 17 [86 S.Ct. 684, 693, 15 L.Ed.2d 545], in arriving at its decision on obviousness.

The section 103 test of nonobviousness set forth in *Graham* is a four part inquiry comprising, not only the three familiar elements (scope and content of the prior art, differences between the prior art and the claims at issue, and level of ordinary skill in the pertinent art), but also evidence of secondary considerations, when such evidence is, of course, present. *Jones v. Hardy,* 727 F.2d 1524, 1527.

Only after all evidence of nonobviousness has been considered can a conclusion on obviousness be reached.

### Scope and Content of the References

Oishei shows a windshield washer system and Stouffer shows a fluidic nozzle. However, the Oishei device employs an hemispherical rubber nozzle with a slit and makes no reference to substitution of another nozzle such as that envisioned by Bauer.

Stouffer's invention is for an improved type of fluidic nozzle and there is no suggestion that it might be incorporated into a windshield washer system.

---

5. *See* Declaration of Dharapuram N. Srinath dated August 30, 1982. (Plaintiff's Exhibit 7).

In the Stouffer '002 patent, there are 86 claims defining the invention and directed to a range of features; most recite the liquid spray apparatus. There are, however, a number directed to proposed uses for the apparatus. For example, claims 10, 12, 24, 39, and 48 are directed to *paint spraying;* claims 11, 13, 25, 38, and 86 to *agricultural spraying,* and claims 46, 51, 52, 79, 80, 81, and 82 to *hand-held* or *hand-operable* means.

These claimed uses may be coupled with the following list of applications to determine the scope of the invention:

1. Agricultural spray
2. Paint spray
3. Oral irrigator
4. Aerosol sprays
5. Fluidized solid processing
6. Flow metering
7. Atomization
8. Fluid mixing
9. Burner fuel injection
10. Fiber laying
11. Drying
12. Massaging
13. Cleansing.

The specification pertinent to "cleansing" discusses the removal of make-up, grease, or dirt from the face, hands and/or body. (Col. 16, lines 24–41).

It should be noted that none of the uses contemplated are pertinent to a rapidly moving vehicle with its hurricane-like wind currents.

■ At one point in the trial when the inventor of Stouffer '002 was on the stand, he was asked:

Q. Did it ever occur to you that this 002 device would be used in a windshield washer environment?

A. No. The reason is that—I had done tests with the agricultural application. In promoting this, one of the ways you do it is you run a test for the customer.

We had the spraying equipment people, we had insecticide people, chemical people, and one other, the Department of Agriculture.

And during these tests, in these breezes, it was, in my opinion, difficult to even combat the drifts that were there of five-to-seven mile an hour.

So I thought it was a bit stretching it to extrapolate the nozzle into the windshield case which has a much more severe aerodynamic problem.

Tr. 95–96.

Q. But was there anything in and of those patents that suggests to you that if you did combine them, as the Board of Appeals did, that you would get any of those new results?

A. No. There's nothing in there. I just can't find anything that would do that.

Tr. 130–31.

It is difficult to give credence to the PTO's position when the inventor of the invention cited as pertinent disagrees with its applicability. Hence, it is clear that plaintiff's combination of a fluidic oscillator in a windshield washer system was not contemplated or suggested by Stouffer.

*Ordinary Skill in the Art*

■ The testimony of those skilled in the art is entitled to substantial weight. *Orthopedic Equipment Co. v. United States,* 702 F.2d 1005 (Fed.Cir.1983). While the combination of references may have been obvious to the examiner, it was not so obvious to those versed in the field, such as the witnesses from the automobile industry. Messrs. White, in person, and Strobel, by deposition, testified that Bauer's[6] device produced new and improved results which they would not have anticipated.

Charles E. White was senior engineer at Ford Motor Company from 1960 to 1975 and supervised six engineers working in the area of windshield washer nozzles. His approval was required before a windshield

---

**6.** Although Peter Bauer sat at the defendant's table throughout the trial, it should be noted

that he never took the stand to dispute any testimony or evidence presented by plaintiff.

washer could be installed on a new Ford car.

Carmon R. Strobel testified by deposition that he was employed at the Chrysler Company from 1954 to 1980. From 1964 to 1980, he was in charge of the design, development, and field testing of windshield washer nozzles. He testified that he saw nothing in the Stouffer oscillator that he could use in a windshield washer nozzle. Both White and Strobel testified that the combination of Oishei and Stouffer patents relied on by the Examiner to support his finding of obviousness was not obvious to them. White indicated that before Bauer he found it difficult to believe that an oscillating fan action could take place without movement of the oscillator.

## Commercial Success

■ The plaintiff's windshield washer is enjoying remarkable commercial success. As the Board observed:

> Evidence of wide commercial success including evidence that the invention has virtually replaced all previous windshield washers on newer U.S. automobiles has been presented by appellant.

Plaintiff's Exhibit 6, Board of Appeals Decision, page 4, lines 5–7.

At trial, Mr. Fred W. Sherling, counsel for defendant, stated:

> They have great commercial success for this nozzle being used as a windshield washer. We do not dispute that.

Tr. 18.

Evidence was introduced which shows that major manufacturers consider the device to be so useful as to feature it in their advertising for the new cars being introduced.

Commercial success is a strong factor favoring nonobviousness.

> [T]he teachings of the prior art prima facie would have suggested to one of ordinary skill in the art the claimed invention [was obvious].... However, the evidence of secondary considerations ..., particularly commercial success, is extremely strong, and is entitled to great weight.

*Simmons Fastener Corp. v. Illinois Tool Workers,* 739 F.2d at 1575–76 (Fed.Cir. 1984).

In *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538 (Fed.Cir.1983), the court said

> [E]vidence rising out of the so-called "secondary considerations" must always[,] when present[,] be considered en route to a determination of obviousness.... [E]vidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not.

Additional citations noted in *Stratoflex* are apposite: *In re Fielder,* 471 F.2d 640 (C.C. P.A.1973); *In Re Mageli, et al.,* 470 F.2d 1380, 1384 (C.C.P.A.1973); *W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1555 (Fed.Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

The commercial success which the Bauer system has attained in a highly competitive industry is proof that it has real advantages over the prior art. These advantages include:

1. Oscillation without moving parts;

2. Projection of droplets, through wind currents, at high and low speeds, to a wide area of the windshield;

3. Ability to tailor the spray to a variety of cars and windshields of different shapes;

4. Installation without "aiming," such as is required in assembly of conventional washers;

5. Increased durability permitting omission of shield used with conventional units;

6. Less chance of clogging since openings are much wider than those of conventional nozzles; and

7. Increased efficiency of windshield cleaning due to full soaking of windshield before wiper blade moves.

## Nexus

Defendant admits that the secondary consideration, commercial success, is applicable to some of Bauer's claims, 2, 11, 13,

15, 16, and 21. He alleges, however, that "there is no nexus between the subject matter of those claims and the windshield washer system which is the basis of plaintiff's commercial success. In support of this statement, defendant notes that the windshield washer system sold commercially includes a taper limitation, which taper is claimed in Bray Patent No. 4,463,904. In other words, the Bauer fluidic nozzle system, plus the Bray modification.

The Bray patent is directed to an improvement in the fluid oscillator used in the Bauer system. It is alleged that during cold weather oscillators, as envisioned by Bauer, may not be successful in producing a full fan angle. The Bray patent calls for tapering one wall of the fluidic oscillator "about 5° from the power nozzle to the outlet throat and the outlet or throat has the substantially same cross-sectional area maintained for a given oscillatory angle." Bray Patent No. 4,463,904, Plaintiff's Exhibit 25 attached to the March 5, 1985 Deposition of Carmon Strobel. The taper is claimed to provide improved "cold start" capabilities. The Bray patent mentions the Bauer application which was one of the references cited during its prosecution.

Bauer was the first to incorporate fluidic oscillators in a windshield washer system. Bray, cognizant of Bauer's contribution, found that a specific design of oscillator made it easier to start the washer in cold weather. Each obtained a patent for his respective contribution. Each assigned his patent to the plaintiff and each shares in the commercial success which plaintiff has achieved.

The subject matter of both patents contemplates a fluidic nozzle. That is the type which is displacing prior "solid stream" nozzles in windshield washers. As such, the nexus is clear.

A nexus between the merits of the invention and the evidence offered must be established before that evidence becomes relevant to the question of obviousness. *In re Caveney*, 386 F.2d 917, 55 CCPA 721 (1967). The important question is whether the invention's commercial success is related to advantages flowing from its use which were not available to the purchasing public before the invention was made. If the commercial success is unrelated to the merits of the invention, *e.g.*, if demand is a product solely of advertising, then it cannot be persuasive of nonobviousness.

*In re Felton*, 484 F.2d at 501.

*Decision*

The doctrine set out in *DeSeversky v. Brenner*, 424 F.2d 857 (D.C.Cir.1970), contains two pertinent points which guide the Court in its decision.

■ 1. The plaintiff at a trial *de novo* may introduce evidence not previously presented to the U.S. Patent Office if he does not present new issues.

■ 2. In trials *de novo*, the decision of the U.S. Patent Office will not be overturned unless new evidence is introduced which carries thorough conviction that the Patent Office erred.

The evidence submitted by plaintiff in the course of trial raised no new issues; therefore, it was considered by the Court in arriving at its finding that the Patent Office had, indeed, erred. Two errors made by the Patent Office are of particular importance.

■ 1. Failure to comply with the requirements of *In re Sernaker*, 702 F.2d 989 (Fed.Cir.1983) and *Stratoflex v. Aeroquip*, 713 F.2d 1530 (Fed.Cir.1983), in considering whether or not the invention was obvious.[7]

2. A mistaken conclusion that a specific range of droplet size was omitted as an essential feature of the claims.

**7.** The Court is cognizant of the fact that 35 U.S.C. § 103 was amended between the time the examiner and Board of Appeals of the PTO made their findings and the Court considered this case. The amendment follows:

Section 103. Section 103 of title 35, United States Code, is amended by adding at the end thereof the following:

Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this sec-

## Conclusion

The claims remaining in the application may be divided into two categories:

■ I. Rejected claims 2, 11, 13, 15, 16, and 21, which include a fluidic oscillator with no moving parts.

II. Rejected claims 1, 3, 4, 5, 6, 7, 9, 10, 12, 20, 22, 23, 24, 25, 26, 27, and 28, which are based on a sweeping jet "no matter how it is swept." (Plaintiff's Exhibit 1, col. 9, lines 50–53).

The Court finds that plaintiff supplied persuasive evidence that the Category I windshield washer system produces, new, unexpected, and advantageous results. His experts testified that this system would not have been obvious to those skilled in the art. Other witnesses, supported by exhibits, testified that this is the unit which major automobile manufacturers have adopted. Accordingly, it is clear that the claims in Category I properly define the invention and are allowable.

■ The claims in Category II do not particularly point out and distinctly claim the invention. As such, they fail to meet the requirements of 35 U.S.C. § 112 (1975).

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

There are two claims, 3 and 22, which call for "vibratory means" instead of an oscillator with no moving parts. These claims are also considered to be anticipated by Oishei. See col. 2, lines 3–5:

The vibrating action of the orifice during operation causes the breakup of the fluid into fine particles.

and col. 2, lines 58–61:

The discharge instantaneously causes reclosing of the orifice and during a sin-gle stroke of the relatively high pressure pump, the orifice is repeatedly opened and closed resulting in the vibrating orifice.

Accordingly, the claims in Category II are rejected by the Court.

The invention is a worthy but narrow one, for a windshield washer system incorporating a fluidic oscillator with no moving parts, which oscillator projects a fan-shaped jet to the windshield.

■ It is not, as plaintiff contends, a windshield washing system which performs the function of projecting a sweeping jet no matter how that function may be achieved. Such a contention is similar to an attempt to patent the varying flow of water from a fire hose when the invention rests in the structure of the nozzle which controls the flow. The use of functional expressions to describe the novel features of the invention is not in compliance with the statute.

It is also true that the patentability of apparatus claims must depend upon structural limitations and not on mere statements of functions.

*Galland-Henning Mfg. Co. v. Dempster Brothers, Inc.,* 315 F.Supp. 68, 84 (E.D. Tenn.1970), (cited in *Application of Michlin,* 256 F.2d 317, 320 (C.C.P.A.1958)).

Accordingly, the Court finds plaintiff's claims 2, 11, 13, 15, 16, and 21 are granted. Plaintiff's claims 1, 3, 4, 5, 6, 7, 9, 10, 12, 20, 22, 23, 24, 25, 26, 27, and 28 are rejected.

---

tion where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

This section would appear to prevent consideration of Stouffer's '002 patent as prior art since Bowles Fluidics was the owner of both '002 and Bauer's. It was always stated that the Oishei patent was considered only in combination with '002 so would not stand on its own feet.