NEWMAN, Circuit Judge,
concurring in part, dissenting in part.
I concur in Part III of the court’s opinion, and agree that Wrigley does not in *1367 fringe Cadbury’s '893 patent. However, I must dissent from Parts I and II. I would sustain the validity of Wrigley’s '233 patent, for the district court departed from the routine correct law of obviousness and anticipation. On the correct law, the district court’s decisions on these grounds are not supportable.
I. Obviousness
To be patentable, the subject matter must be unobvious in view of what has gone before. This determination is made by examiners in the Patent and Trademark Office; and when that agency’s grant of a patent is challenged in litigation, the court applies the analytical protocol set forth in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), and reconfirmed by the Court in KSR International Co. v. Teleflex Inc., 550 U.S. 398, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). In litigation the burden of proof is on the challenger by clear and convincing evidence, for the patent as granted by the agency is presumed valid.
In Graham the Court set forth four factual areas on which the determination of obviousness is based: (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention, (3) the level of ordinary skill in the field of the invention, and (4) any objective factors such as commercial success, long-felt but unsolved need, and copying by others. 383 U.S. at 17-18, 86 S.Ct. 684. The district court erred in its treatment of the fourth factor, for as explained in Simmons Fastener Corp. v. Illinois Tool Works, Inc., 739 F.2d 1573 (Fed. Cir.1984):
The section 103 test of nonobviousness set forth in Graham is a four part inquiry comprising, not only the three familiar elements (scope and content of the prior art, differences between the prior art and the claims at issue, and level of ordinary skill in the pertinent art), but also evidence of secondary considerations when such evidence is, of course, present.
Id. at 1575.
The district court, and my colleagues on this panel, err by holding that Cadbury established a prima facie case of obviousness on prior art alone, viz., the Luo and Parrish references. It is agreed that these references do not show the Wrigley composition. When the evidence of commercial success and copying by the infringer is considered, a prima facie case of obviousness is not demonstrated. In Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530 (Fed.Cir.1983) the court explained that “evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not. It is to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art.”
The district court, holding that a prima facie case of obviousness was established on the prior art alone, shifted the burden of proof to the patentee to rebut the asserted, but improper, prima facie case with the evidence of commercial success and copying. This is a distortion of the burden of proof, which never leaves the challenger, see In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig., 676 F.3d 1063, 1078 (Fed.Cir.2012) (“[T]he Supreme Court has never imposed nor even contemplated a formal burden-shifting framework in the patent litigation context.”). It is also a distortion of rea *1368 soned analysis for, as the Court stated in Graham, “[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.” 383 U.S. at 17-18, 86 S.Ct. 684. All of the circumstances must be considered.
The panel majority affirms the district court’s misplaced analysis, agreeing that the Luo and Parrish references present a prima facie case of obviousness and that the burden of rebuttal shifts to the patentee. Maj. op. at 1363 (“Therefore, to show that the cooling effect of the combination of WS-23 and menthol was unexpected, Wrigley needed to demonstrate that the results were unexpected to a significant degree beyond what was already known about the effect of combining WS-3 and menthol.”). The cited references indeed show relevant information. The Luo reference shows WS-3 in combination with menthol, and mentions the generic class of N-substituted-p-menthane carboxamides, but does not mention WS-23. The Parrish reference mentions both WS-3 and WS-23 as replacements for menthol, but does not show the combination of either WS-3 or WS-23 with menthol. Wrigley provided a large amount of evidence, much of it from Cadbury’s records, of the unexpected results and commercial success of the combination of WS-23 with menthol.
The evidence established that (1) although WS-3 alone is two to three times more effective as a coolant in chewing gum than WS-23 alone, when combined with menthol WS-23 is not only more effective, but is sufficiently more effective such that there is a vast preference among gum-chewers; and (2) Cadbury observed its major loss of sales to the new Wrigley gum, analyzed the Wrigley product, concluded that the WS-23 menthol combination was responsible for the consumer preference, and then copied the Wrigley product. This information surely colors the understanding of the prior art, as seen by a person of ordinary skill in the field of the invention, for the improved properties that produced the striking consumer preference for Wrigley’s new composition are nowhere signaled in the cited references. These objective considerations are not consigned to rebuttal, for they are direct evidence of obviousness.
The district court erred in holding the '233 composition prima facie obvious on only part of the evidence, ignoring the evidence that supports unobviousness. As remarked by Judge Learned Hand, “Courts, made up of laymen as they must be, are likely either to underrate, or to overrate, the difficulties in making new and profitable discoveries in fields with which they cannot be familiar; and, so far as it is available, they had best appraise the originality involved by the circumstances which preceded, attended and succeeded the appearance of the invention.” Safety Car Heating & Lighting Co. v. General Elec. Co., 155 F.2d 937, 939 (2d Cir.1946).
The advantageous properties of the Wrigley combination of WS-23 and menthol are not predicted or suggested or even hinted in any reference. My colleagues on this panel hold that ‘Wrigley needed to demonstrate that the results were unexpected to a significant degree beyond what was already known about the cooling effects of WS-3 and menthol.” Maj. op. at 1363. This criterion, although unwarranted, was surely met. Cadbury’s own test report states that although WS-3 alone exhibits a cooling intensity three *1369 times that of WS-28, when combined with menthol “WS-28 cooling technology was positively correlated with increased overall liking and also with flavor and cooling intensity at 5 minutes and ten minutes.” J.A. 3320. This observation has no foreshadow in the prior art. It is highly relevant, and on the facts of this case precludes summary judgment of obviousness.
Nonetheless, the district court states, and my colleagues agree, that there was “no evidence of any nexus between the success of Wrigley’s chewing gums covered by Claim 34 and the specific combination of menthol and WS-23.” Maj. op. at 1363. The record is rife with such evidence. Cadbury’s own records specifically identify the combination of WS-23 and menthol as “key drivers for liking.” J.A. 3310; J.A. 2996-3000. As further evidence of a clear and undisputed nexus, Wrigley points to marketing material that stresses the cooling effect of its WS-23 reformulated chewing gums, describing the gums as “Even More Powerful,” producing “Icy Cool Breath That Lasts,” and generating a “Just Brushed Clean Feeling;” and that “It’s Cooler, Longer Lasting and MORE ICY!” J.A. 3012; J.A. 3261-62; J.A. 2981.
Similarly, after Cadbury copied Wrigley’s formulation using WS-23, Cadbury advertised its new product’s “New Taste. New Chill” and “Now. Cooler. Longer.” Advertising the benefits of the claimed invention links the invention to commercial success. Cf. Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1579 (Fed.Cir.1997) (“The prominence of the patented technology in ... advertising creates an inference that links the ... invention to this success.”). No contrary evidence was offered to the strong evidence of a nexus between the invention and its market success. “To the extent that the patentee demonstrates the required nexus, his objective evidence of nonobviousness will be accorded more or less weight.” In re GPAC Inc., 57 F.3d 1573, 1580 (Fed.Cir.1995). “Once the patentee demonstrates a prima facie nexus, the burden of coming forward with evidence in rebuttal shifts to the challenger.” Id. No such rebuttal evidence was presented.
My colleagues’ finding that nexus was not established, maj. op. at 1363-64, is hard to fathom. Cadbury’s own documents showed that Cadbury changed its formulation to copy Wrigley’s new gums containing WS-23 and menthol. A Cad-bury internal report states that Cadbury expected that if it did not reformulate its gums, it would lose market share at a cost in the United States of “$2MM in Year 1, then $3.5MM, $5.0MM, and $7.0MM in subsequent years and projects that maximum lost sales would amount to half of the brand growth projected on Dentyne Ice to be at risk (approx. $25MM per year).” J.A. 2984. The Cadbury report states that Wrigley’s gums use a “newer, more advanced cooling system than WS-3” and that “cooling” and “breath freshening” are “key drivers of [consumer] loyalty.” J.A. 2985.
Contrary to my colleagues’ hypothesis, the fact that Cadbury also copied Wrigley’s sweeteners does not negate the undisputed record that Cadbury copied the composition of WS-23 with menthol in order to obtain the improved cooling of this composition, an effect that both competitors advertised for these products. Cad-bury’s internal documents state that Cad-bury copied the Wrigley cooling system because it was “more advanced” and “preferred” by consumers over Cadbury’s product which used WS-3 with menthol.
*1370 It is not disputed that the superior properties of the WS-23 menthol combination were not shown or suggested in the prior art. The district court erred in its application of the Graham factors by asking whether the evidence of secondary considerations were sufficient to overcome its “final conclusion” that the patent is obvious. D.Ct. op. at 42 (citing Leapfrog Enterprises, Inc. v. Fisher-Price, Inc., 485 F.3d 1157 (Fed.Cir.2007) for the proposition that “the evidence on secondary considerations was inadequate to overcome a final conclusion” of obviousness). “Evidence of secondary considerations, including evidence of unexpected results and commercial success, are but a part of the ‘totality of the evidence’ that is used to reach the ultimate conclusion of obviousness.” Richardson-Vicks Inc. v. Upjohn Co., 122 F.3d 1476, 1483 (Fed.Cir.1997); see also Cyclobenzaprine, 676 F.3d at 1079-80 (“[Ojpinions of this court should not be i'ead to require a burden-shifting framework in derogation of Stratoflex’s directive that objective evidence be considered before making an obviousness determination and in disregard of where the burdens of proof and persuasion are properly placed in district court litigation.”).
A court may not presuppose that, regardless of the evidence of commercial success and unexpected results, the invention is obvious based on prior art alone. The secondary indicia of nonobviousness must be considered in deciding whether a prima facie case of obviousness has been presented. See Stratoflex, 713 F.2d at 1538 (“It is jurisprudentially inappropriate to disregard any relevant evidence on any issue in any case, patent cases included. Thus evidence rising out of the so-called ‘secondary considerations’ must always when present be considered en route to a determination of obviousness.”); Ashland Oil, Inc. v. Delta Resins & Refractories, Inc., 776 F.2d 281, 306 (Fed.Cir.1985) (“Just as it is legal error for a district court to fail to consider relevant evidence going to secondary considerations, it may be legal error for a district court to presuppose that all evidence relating to secondary considerations, when considered with the other Graham indicia relating to the obviousness/nonobviousness issue, cannot be of sufficient probative value to elevate the subject matter of the claimed invention to the level of patentable invention.”) (internal citation omitted); Pentec, Inc. v. Graphic Controls Corp., 776 F.2d 309 (Fed.Cir.1985) (“Objective evidence of nonobviousness, when present, must always be considered before reaching a legal conclusion under § 103”); Kan. Jack, Inc. v. Kuhn, 719 F.2d 1144, 1150-51 (Fed.Cir.1983) (finding that a district court’s consideration of commercial success complied with “the basic requirement that all evidence touching the obvious-nonobvious issue be fully considered before a conclusion is reached on that issue”); Richardson-Vicks 122 F.3d at 1483 (“we must consider all of the evidence under the Graham factors before reaching our decision”); In re Mageli et al, 470 F.2d 1380, 1384 (CCPA 1973) (evidence bearing on issue of nonobviousness “is never of ‘no moment,’ is always to be considered and accorded whatever weight it may have.”). To the extent this court has made statements to the contrary, e.g., Wyers v. Master Lock Co., 616 F.3d 1231, 1246 (Fed.Cir.2010) (“secondary considerations of nonobviousness— considered here by the district court— simply cannot overcome a strong prima facie case of obviousness”), earlier precedent controls. See Newell Cos., Inc. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed.Cir.1988) (“[PJrior decisions of a panel of the court are binding precedent on subse *1371 quent panels unless and until overturned in banc”)
The district court erred in granting summary judgment of obviousness, for the criteria for summary judgment of invalidity on this ground were clearly not met. I respectfully dissent from the court’s contrary ruling.
II. Anticipation
The district court also granted summary judgment of invalidity on the ground of anticipation, not relying on any reference cited for obviousness, but relying on a different reference that does not show the claimed combination at all, but merely presents the ingredients on lists.
The term “anticipation” in patent law means that the invention was previously known. If the invention was known, it is anticipated. The district court found “anticipation” by a reference that presents lists of hundreds of possible ingredients of chewing gum, from which the district court, and now this court, select Wrigley’s components WS-2B and menthol. The purported anticipatory reference does not show this combination, and does not present so short and selective a list of these ingredients as to warrant an inference that their combination was already known. The Shahidi patent, U.S. Patent No. 5,688,-491 (the '491 patent), on which the district court and my colleagues rely, contains lists of many known ingredients that might be used in an assortment of products including chewing gums, dentifrices, and mouthwashes. Shahidi’s lists include humectants, surfactants, thickeners, abrasives, stannous salts, copper salts, flavoring agents, sweeteners, and cooling agents, which can be combined in over a million possible combinations, see Wrigley Br. 18. Shahidi names three known preferred cooling agents: WS-3, WS-23, and TK-10, as well as a large number of other cooling agents in five identified U.S. Patents. '491 patent eol.411.14-32.
Shahidi also states that flavoring agents “well known in the art” can be used, naming anise, cassia, clove dihydroanethole, estragóle, eucalyptol, menthol, methyl salicylate, peppermint, axanone, phenyl ethyl alcohol, sweet birch, eugenol, spearmint, cinnamic aldehyde, menthone, alpha-ion-one, ethyl vanillin, limonene, isoamylacetate, benzaldehyde, thymol, ethylbutryate, and “many others.” Id. at col.7 11.16-22. Shahidi does not describe any specific composition containing either WS-23 or menthol, nor the combination of WS-23 and menthol for any purpose. Nonetheless, my colleagues affirm the district court’s grant of summary judgment, and hold that Shahidi “anticipates” the Wrigley composition of WS-23 and menthol. That is an incorrect understanding of the law of “anticipation.”
The district court apparently went astray in applying this court’s ruling in Perricone v. Medicis Pharmaceutical Corp., 432 F.3d 1368 (Fed.Cir.2005), for the district court states that it suffices to anticipate if the ingredients WS-23 and menthol can be found somewhere on Shahidi’s lists, although Shahidi shows only long lists of possible ingredients for Shahidi’s unrelated compositions. Perricone does not hold that a specific unknown composition is deemed known if its components can be found separately on lists of possible components. See id. at 1375-76. It is the scope, specificity, and content of the list that controls whether the disclosure is so specific as to be deemed a disclosure of specific combinations.
This court has explained that, in order to anticipate, the prior art must be such *1372 that a person of ordinary skill would “at once envisage” the specific claimed composition. Impax Labs., Inc. v. Aventis Pharms. Inc., 468 F.3d 1366, 1383 (Fed.Cir.2006); In re Petering, 49 CCPA 993, 301 F.2d 676, 681 (1962). When the listing of many possible ingredients does not produce immediate recognition of the specific combination, the list does not “anticipate” that combination. My colleagues misconstrue Perricone, for that case does not rely on the distinction between a list and a genus in determining whether the claimed invention is “new,” and does not hold that every list, of whatever form and length and complexity, anticipates every combination of the listed components. In Perricone the list contained fourteen ingredients, including ascorbyl palmitate, for use in cosmetic cream, and the court held that this anticipated claims to ascorbyl palmitate for use in cosmetic cream. Perricone did not hold that all lists are anticipating, as a matter of law. Rather, Perricone alerts the trier of fact to the factual nature of “anticipation,” and the specific circumstances whereby a specific product on a list may be found to be identified for the patentee’s specific composition.
The district court erred in viewing Perricone as holding that “the mere fact that the elements of a claim are set forth in the prior art patent in a list along with the other ingredients without any ‘special emphasis’ is irrelevant to an anticipation analysis. Instead, all that is relevant is whether the prior art disclosure is enabling.” D.Ct. op. at 27 (internal citation omitted). To the contrary, the way the elements are set forth in the reference and its lists is highly relevant, for an anticipating reference must show the specific ingredients and direct their selection such that the specific combination is deemed to have existed. See Impax Labs., 468 F.3d at 1383 (the specific combination must be at once envisaged).
It was not disputed that a person of ordinary skill would not at once envisage Wrigley’s combination of WS-23 and menthol from Shahidi’s lists. See Eli Lilly & Co. v. Zenith Goldline Pharms., Inc., 471 F.3d 1369, 1375 (Fed.Cir.2006) (“To anticipate, a prior art reference must place the inventive compound or composition in the possession of the public”). From the large number of listed ingredients and possible combinations of ingredients, and the absence of any selection of the combination of WS-23 and menthol in chewing gum, Shahidi does not anticipate the combination of WS-23 and menthol in chewing gum. From the court’s erroneous ruling of law and its incorrect application, I respectfully dissent.