NEWMAN, Circuit Judge,
dissenting.
United States Patent No. 7,591,844 (“the ’844 Patent”) is for a balloon-expandable vascular stent having a drug-eluting coating of a copolymer of vinylidene fluoride and hexafluoropropylene in about 85/15 weight percent monomer ratio. Novelty is not disputed. On this inter partes reexamination requested by Boston Scientific Scimed and Abbott Laboratories, the PTAB held that the prior art rendered obvious the claimed vascular stent. I cannot agree, for no reference or combination of references, or common knowledge or common sense, teaches or suggests or motivates the claimed stent.
Claim 1 was accepted as representative:
1. A device for intraluminal implantation in a vessel comprising a balloon-expandable stent and a pharmaceutical agent-containing coating, said coating comprising a biocompatible polyfluoro copolymer that comprises about eighty-five weight percent vinylidine fluoride [VDF] copolymerized with about fifteen weight percent hexafluoropropylene [HFP] and at least one pharmaceutical agent intermixed with said copolymer, wherein said coating has not been subjected to a maximum temperature greater than 60° C during the coating process or afterward, thereby providing an adherent coating that remains adhered to the device upon expansion of the balloon-expandable stent.
*1353 ’844 Patent, col. 37,1. 59-col. 38,1. 3. It was generally agreed that the novelty and advantages are due to the specific copolymer coating material for the balloon-expandable stent.
The references cited by the PTO Board recite thousands of polymer and copolymer components for stent coating materials, but not the copolymer of the ’844 Patent, although this copolymer was known for other uses. There is no hint, no suggestion, of its use as a drug-eluting coating in a vascular stent, nor were its advantages foreseen. Nonetheless the Board deemed it obvious,[1] and this court agrees. I respectfully dissent.

Errors of fact, analysis, and law

The Board relied on three groups of references, and the court has followed this pattern on appellate review. The Board’s first set of references was cited to show that polymer-coated vascular stents were known; the second set was “consulted” to show various polymers used in medical devices and structures unrelated to vascular stents; and the third set was cited to show that the ’844 Patent’s copolymer was known for unrelated uses such as clothing, boots, helmets, electrical tapes, and linings for tanks and storage vessels. No reference or combination of references teaches or suggests or motivates- or otherwise renders obvious the ’844 Patent’s vascular stent.

The coated vascular stent references (Tuch)

The Board provided a foundation for its analysis with the first set of references, focusing on the Tuch patent, which shows polymer-coated drug-eluting vascular stents. Such vascular stents were known, and the ’844 Patent so states. U.S. Patent No. 5,824,048 (the Tuch reference) names hundreds of monomers encompassing thousands of polymers and copolymers, and states that they may all be usable for vascular stents in various conditions. However, the specific ’844 Patent’s copolymer is not mentioned, and although the list includes one of the ’844 Patent’s comonom-ers, vinylidene fluoride, the other known monomer, hexafluoropropylene, is not mentioned. This silence cannot render obvious the omitted copolymer, for nothing in Tuch suggests selection of this omitted copolymer from the thousands of polymeric and other potential stent materials listed by Tuch:
The polymer may be either a biostable or a bioabsorbable polymer depending on the desired rate of release or the desired degree of polymer stability, but a bioabsorbable polymer is probably more-desirable since, unlike a-biostable polymer, it will not be present long after implantation to cause any adverse, chronic local response. Bioabsorbable polymer's that could be used include poly(L-lactic acid), polycaprolactone, poly(lactide-eoglycolide), poly(hydroxy-butyrate), poly(hydroxybutyrate-co-val-erate), polydioxanone, polyorthoester, polyanhydride, poly(glycolic acid), poly(D,L-lactic acid), poly(glycolic acid-co-trimethylene carbonate), polyphos-phoester, polyphosphoester urethane, poly(amino acids), cyanoacrylates, poly(trimethylene carbonate), polyfimi-nocarbonate), copoly(ether-esters) (e.g. PEO/PLA), polyalkylene oxalates, poly-phosphazenes and biomolecules such as fibrin, fibrinogen, cellulose, starch, collagen and hyaluronic acid. Also, biostable polymers with a relatively low chronic tissue response such as polyurethanes, silicones, and polyesters could be used *1354 and other polymers could also be used if they can be dissolved and cured or polymerized on the stent such as polyole-fins, polyisobutylene and ethylene-al-phaolefin copolymers; acrylic polymers and copolymers, vinyl halide: polymers and copolymers, such as polyvinyl chloride; polyvinyl ethers, such as polyvinyl methyl ether; polyvinylidene halides, such as polyvinylidene fluoride and poly-vinylidene chloride; polyacrylonitrile, polyvinyl ketones; polyvinyl aromatics, such as polystyrene, polyvinyl esters, such as polyvinyl acetate; copolymers of vinyl monomers with each other and olefins, such as ethylene-methyl metha-crylate copolymers, acrylonitrile-styrene copolymers, ABS resins, and ethylene-vinyl acetate copolymers; polyamides, such as Nylon 66,and polycaprolactam; alkyd resins; polycarbonates; polyoxy-methylenes; polyimides; polyethers; epoxy resins; polyurethanes; rayon; rayon-triacetate; cellulose, cellulose acetate, cellulose butyrate; cellulose acetate bu-tyrate; cellophane; cellulose nitrate; cellulose propionate; cellulose ethers; and carboxymethyl cellulose,
Tuch, col 6,11.16-63.
The Tuch encyclopedia cannot be taken to teach or suggest or motivate that the unmentioned copolymer of the ’844 Patent should be identified and used in a vascular stent. “[T]he breadth of these choices and the numerous combinations indicate that these disclosures would not have rendered the claimed invention obvious to try.” Leo Pharma. Prods., Ltd. v. Rea, 726 F.3d 1346, 1356-67 (Fed. Cir. 2013). Nothing in the Tuch reference, or any other reference, suggests use of the ’844. Patent’s copolymer for vascular stents, even for experimentation:
[A]n invention would not have been obvious to try when the inventor would have had to try all possibilities in a field unreduced by direction of the prior art.
Bayer Schering Pharma AG v. Barr Labs., Inc., 576 F.3d 1341, 1347 (Fed. Cir. 2009).
However, the Board deemed it irrelevant that the ’844 Patent’s copolymer was omitted by Tuch, and erroneously found that this copolymer was “a prior art element used for its established function.” The Board statéd:
It is unnecessary that Tuch disclose any shortcomings in its list of polymers for the ordinary skilled worker to have found it obvious to have employed an alternative polymer for its coating since it is obvious to use a prior art element for its established function.
Board Op. at 10-11. This finding has no support, for Tuch does not lead to the undisclosed copolymer of the ’844 Patent or any established function in the drug-eluting vascular stents to which Tuch is directed. The “established function” of this copolymer is shown in the prior art to be quite different, as in the cited Lo reference, discussed post.
Tuch does not provide substantial evidence of the ’844 Patent’s copolymer as a stent material or possible stent material. The “substantial evidence” standard of judicial review of Board findings “involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency’s decision.” In re Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000). The Tuch reference as a whole, with its massive listing of thousands of polymers and copolymers but not the ’844 copolymer, does not provide substantial evidence of any suggestion or any reason to select the ’844 Patent’s copolymer for use in drug-eluting vascular stents.

“Consultation” of the Tu reference

Perhaps recognizing the inadequacy of Tuch, the Board “consulted” the Tu et al. reference, U.S. Patent No. 4,816,339. Tu describes multilayered “suturable vascular *1355 implants” having “improved luminal hydro-phobicity, compliance, strength and elasticity.” Tu, col. 2,11. 7-11. The first Tu layer is made of poly(tetrafluoroethylene), the second layer is “a mixture of poly(tetraf-luoroethylene) and elastomer,” and an optional third layer is made of “elastomer.” Tu, col. 3, 11. 48-65. Tu states that the elastomer may be selected from a diverse group of polymers and copolymers, including the ’844 Patent’s copolymer components:
The elastomer is preferably selected from the group consisting of polyvinyli-dene fluoride co-hexafluoropropylene, poly(tetrafluoroethylene-coperfluoro(me-thylvinylether)), poly(tetrafluoroethy-lene-co-propylene), poly(vinylidene-co-chlorotrifluoroethylene), silicones, fluo-rosilicones, fluoroalkoxy phosphazenes, segmented copolyester ether, styrene butadiene block copolymers, polyeth-ers[,] acrylonitrile butadienes, isoprenes, polyurethanes, and mixtures thereof.
Tu, col. 4, 11. 30-39. Tu’s preferred elas-tomers are a copolymer of tetrafluoroethy-lene and propylene, and silicone. Tu, col. 4, 11. 61-66; col. 5, 1. 7. The Board stated:
The reason to consult Tu is because Tuch’s list of polymers is clearly not exhaustive in viéw of Tuch’s description of broad- classes of polymers, such as vinyl halide polymers and copolymers, and polyvinylidene halides. Tuch 6. Tuch also uses the transitional phrase “such as” in prefacing the list of biostable polymers and in reciting specific examples of the broader classes, indicating that Tuch did not confine the skilled worker to the explicit list, but contemplated polymers outside of it.
Board Op. at 7. Tu does not state that its multilayered suturable implants are useful in vascular stents, or suggest selection- of any of its materials for this purpose. Tu cannot be read as teaching that its materials enlarge the listing of suitable stent polymers in Tuch, to place the Tu materials in the Tuch disclosure. The Tu devices are different products requiring different properties for different purposes.
The Board states that it consulted Tu “for teaching of a medical device comprising VDF:HFP.” Board Op. at 3. Tu does not mention vascular stents, and suggests no composition or properties for such use. It is apparent that the Tu multilayered structure differs from a vascular stent, and the Board did not find otherwise. Also, as an additional difference Tu requires “curing” at a temperature of about 150° C to about 350° C, Tu, col. 7,1L 66-68; col. 9,11. 12-14, excluding the ’844 Patent product’s temperature ceiling of “60° C during the coating process or afterward.” ’844 Patent, col. 37,1. 66-col. 38,1.1.
The Board states that'Tu shows that the VDF:HFP copolymer “has the properties described in Tuch as useful for its stent coating.” Board Op at. 14. The Tuch properties are not the properties of Tu’s multi-layered suturable vascular implants. Tu states that its implants have elasticity “because of the arrangement of layers”:
The biologically compatible material of the present invention has excellent compliance, strength and elasticity because of the arrangement of layers of poly(tet-raflúoroethylene), poly(tetrafluoroethy-lene)/elastomer, elastomer and fibrous elastomers.
Tu, col. 2, 11. 31-35. This is not a teaching or suggestion of the ’844 Patent’s copolymer-coated drug-eluting stent.
Ignoring all of these discrepancies, the Board ruled that since a VDF:HFP -copo-lymer with undefined monomer ratio is usable as Tu’s optional third elastomer layer, it, would have been obvious to use it in the Tuch stent. Neither Tuch nor Tu so suggests. The Board’s ruling illustrates the “insidious” exereise of decisional hindsight, whereby that which the inventor taught is *1356 used by the decision-maker to reconstruct the invention. This fallacy has long been rejected:
To imbue one of ordinary skill in the art with knowledge of the invention in suit, when no prior art reference or references of record convey or suggest that knowledge, is to fall victim to the insidious effect of a hindsight syndrome wherein that which only the inventor taught is used against its teacher.
W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1553 (Fed. Cir. 1983).
Tu does not provide substantial evidence for selecting the ’844 Patent’s copolymer in a vascular stent. The Board acknowledged that neither Tuch nor Tu suggests the 85/15 monomer ratio of vinylidene fluoride and hexafluoropropylene. The ’844 Patent demonstrates differences in the properties of various monomer ratios, in that the 85/15 copolymers are “semicrystalline,” and that copolymers with a 60.6/39.4 ratio are “marketed as elastomers.” ’844 Patent, col. 20, 11. 22-27. This evidence weighs against reliance on the Tu reference to teach the 85/15 copolymer for properties suitable for a vascular stent.
The Supreme Court guides that “it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does.” KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 418, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). Tu does not fill the gaps in Tuch to render obvious the selection of this specific copolymer and ratio for use in the Tuch stent, for Tu provides no reason for a person of ordinary skill to select the 85/15 copolymer for use in Tuch.

The Lo reference

The Board’s third set of references, represented byLo, does not shift this balance. The Board cited U.S. Patent No. 3,178,399 (the Lo reference), a 50-year-old patent that shows that the ’844 copolymer in 85/15 ratio was a known product with known uses. Copolymers of vinylidene fluoride and hexafluoropropylene having comonomer ratios similar to the ’844 Patent’s 85/15 ratio are described in the Lo reference as having a
unique combination of tensile strength and reversible elongation properties and are especially suitable as durable, flexible coatings for application to various fabric surfaces. These surfaces may, in a preferred form of application, take the form of protective clothing (for example, as suits, boots, gloves, helmets and other wearing apparel) and other articles of manufacture which are comprised of exposed surfaces which may be subjected to bending, folding, or other forms of distortion in the course of performing their function under special environmental conditions. They may also be used in film form (either oriented or unoriented) e.g. in electrical tapes, magnetic recording tapes, etc., and as protective coatings on tanks, storage vessels and the like.
Lo, col. 10, 11. 27-39. None of these uses has any relation to a vascular stent or any biological application. However, from Lo’s uses as boot and helmet coatings and electrical tapes, the Board stated that “Lo describes copolymers of vinylidene fluoride (VDF) and hexafluoropropylene (HFP) which have flexibility, elasticity, and extensibility,” Board Op. at 5, and from this selection out of context the Board extracted obviousness of use in a drug-eluting vascular stent. Lo’s range of uses of this known copolymer, undifferentiated as to monomer ratio and copolymer properties, does not fill the gaps in Tuch and Tu to .suggest use for a drug-eluting vascular stent.
The Board erred in its analysis, collecting the elements of the ’844 Patent’s stent from assorted sources, and placing them in *1357 the template of the ’844 claim. The only-guide to this reconstruction is the ’844 Patent itself. See Interconnect Planning Corp. v. Fell, 774 F.2d 1132, 1138 (Fed. Cir. 1985) (“The invention-must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time.”). The Court has reinforced that “a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.” KSR Int’l Co., 550 U.S. at 418-19, 127 S.Ct. 1727. Neither the record nor the law supports the Board’s conclusion that a person of ordinary skill would be motivated to select this Lo copolymer for use in a vascular stent.

The objective evidence

The “secondary considerations” are part of the obviousness determination. See Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) (“Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.”); W.L. Gore, 721 F.2d at 1555 (objective evidence “should when present always be considered as an integral part of the analysis.”).
The Board erred in declining to consider the evidence of copying, commercial success, and medical acclaim. Such evidence “may often be the most probative and cogent evidence in the record.” Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538 (Fed. Cir. 1983), for the objective evidence reflects the “temporal and technical perspective” of the invention. Mintz v. Dietz & Watson, Inc., 679 F.3d 1372, 1378 (Fed. Cir. 2012).
This evidence must be considered along with the entirety of the evidence. Stratoflex, 713 F.2d at 1538-39 (objective evidence “is to be considered as part of all the evidence, not just when the decision-maker remains in doubt after reviewing the art.”); In re Mageli, 470 F.2d 1380, 1383 (C.C.P.A. 1973) (“[Evidence bearing on the facts is never of ‘no moment,’ is always to be considered, and accorded whatever weight it may have.”). The response of the marketplace, and copying by competitors, may' evidence the improved technology and beneficial properties of an invention. Ethicon’s expert Dr. Mikos described the advantages of the ’844 Patent’s stent over the available drüg-eluting stents, and the apparently undisputed copying by the competitors who brought this inter partes reexamination. Mikos Decl. at 38-39. Dr. Mikos testified:
Data on file at Abbott Vascular and relied upon by Abbott in its FDA submissions shows that the PVDF-HFP coated Xience V stent is more thrombor-esistant (i.e., shows greater tendency to reduce thrombus formation) than other drug-eluting stent coatings.
Mikos Decl. at 39. He stated, “numerous clinicians have also emphasized that the. PVDF-HFP polymer used in the Xience V stent shows unexpectedly less inflammation.” Id.
The Board declined to consider the evidence of superior properties and commercial success, stating:
This evidence.is not persuasive since it does not establish that the reduction in inflammation observed with Xience V is in comparison with the closest prior art as required under Baxter, 952 F.2d at 392. Rather, it appears the news articles are reporting that Xience’s polymer is less inflammatory than the polymers on existing stents.
Board Op. at 14.
The Board did not identify what it deemed to be an acceptable prior art comparison, except to state that “Patent Owner has not provided sufficient testimony *1358 that this reduced inflammation would have been unexpected by one of ordinary skill in the art in comparison to the polymers described in Tuch, for example, which teaches stents with polymer coatings, including a homopolymer of VDF (Tuch6).” Board Op. at 14. The Board, did not mention the comparative data in the ’844 Patent, which compared the 85/15 copolymer with stents coated with the polyvinylidene .fluoride (VDF) homopolymer. ’844 Patent, col. 19, 11. 22-48. The data in the specification showed that the polyvinylidene fluoride homopolymer “adhered poorly to the stent and flaked off, indicating they were too brittle” when dried at the low temperatures required by the ’844 Patent. ’844. Patent, col. 19,11. 36—41.
The ’844 Patent also included comparative data with copolymers of vinylidene fluoride and hexafluoropropylene in 92/8 and 91/9 weight percent ratios, and showed the superior results obtained with the 85/15 ratio. ’844 Patent, col. 19, 11. 24-28, 36-41. The ’844 Patent also compared the 85/15 copolymer with copolymers having a 60(6/39.4 ratio, which were “marketed, as elastomers.” ’844 Patent, col. 20, 11. 22-24. Those copolymers, when mixed with rapa-mycin and dried at the claimed temperature, produced “a white film, indicating phase separation of the drug and the polymer.” ’844 Patent, col. 20, 11. 55-60. In contrast, with the 85/15 copolymer “a clear coating, indicating a solid solution of the drug in the polymer, is obtained.” ’844 Patent, col. 20, 11. 53-55. Additional comparative data in the ’844 Patent showed differences in the fraction of drug released over time between the claimed 85/15 copo-lymer and the 60.6/39.4 copolymer of vinyl-idene fluoride and hexafluoropropylene without a topcoat. ’844 Patent, Figs. 3 and 5; col. 21,11. 9-24.
These comparisons are evidence of unpredicted results. “Consistent with the rule that all evidence of nonobviousness must. be considered when assessing patentability, the PTO must consider comparative data in the specification in determining whether the claimed invention provides unexpected results:” In re Soni, 54 F.3d 746, 750 (Fed. Cir. 1995). The Board’s refusal to consider this evidence, instead criticizing the “absence” of comparisons with some undefined prior art, is untenable.
Summary
The references cited by the Board provide no teaching or suggestion or motivation to select the specific copolymer and ratio of the claimed ’844 Patent’s vascular stent, and no basis for expecting that this composition would produce the advantageous properties that are obtained. The Tuch list of stent materials does not lead to selecting the omitted copolymer, of 85% vinylidene fluoride and 15% hexafluoropro-pylene. The Tu multi-layered fabric for medical grafts does not fill this gap in Tuch. And Lo, if anything, leads away from the ’844 Patent, for the Lo products aré not analogous to vascular stents. No combination of references suggests utilization of the ’844 Patent’s copolymer in drug-eluting vascular stents.
Substantial evidence does not support the Board’s findings and conclusion that a person of ordinary skill in the field of this invention would obviously, select the ’844 Patent’s copolymer from its omission in Tuch, from the multilayered fabrics of Tu, and the non-analogous uses in Lo. From the court’s contrary ruling, I respectfully dissent.

. Boston Scientific Scimed v. Cordis Corp., No. 2014-008135, 2015 WL 883933 (P.T.A.B. Feb. 27, 2015) ("Board Op.’’). The successful re-questers withdrew from this appeal, and the PTO Director has intervened to defend the Board's decision, with the filing of briefs and participation in oral argument.